# IN THE COURT OF APPEALS OF IOWA

No. 16-0565
Filed September 13, 2017

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**RILEY AUGUSTUS MALLETT,**
        Defendant-Appellant.
_____

        Appeal from the Iowa District Court for Black Hawk County, George L.

Stigler, Judge.


        Riley Augustus Mallett appeals from a verdict of guilty on a charge of first-

degree robbery. **AFFIRMED IN PART AND REMANDED IN PART.**


        Mark C. Smith, State Appellate Defender, and Nan Jennisch, Assistant

Appellate Defender, for appellant.

        Riley A. Mallett, Anamosa, appellant pro se.

        Thomas J. Miller, Attorney General, and Louis S. Sloven, Assistant

Attorney General, for appellee.


        Considered by Vogel, P.J., Doyle, J., and Goodhue, S.J.*

        *Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2017).

**GOODHUE, Senior Judge.**

Riley Augustus Mallett appeals from a verdict of guilty on a charge of first-degree robbery.

## I.    Background Facts and Proceedings

The first-degree-robbery charge arose out of a robbery of the Greenwood Pharmacy in Waterloo on February 10, 2015.  That night, two men entered the premises; both had masks on, and one had a hand gun.  One of the men wore distinctive black puffy pants with white stars.

The intruder with the unusual pants pointed a gun at pharmacist Wesley Pilkington and handed him a note demanding "all the Xanax and Promethazine [and] Codein[e] before I shoot this bitch up."  The intruder orally repeated the demand of the note.  Pilkington did as ordered, and then the intruder took random drugs off of the shelf.  The two intruders fled through the back door into a residential area.  A silent alarm had been tripped by one of the pharmacy employees, and police arrived within minutes.

Mallett was tracked through the snow and found hiding in a treehouse clothed in shorts even though the weather was cold.  A pair of black puffy pants with white stars matching the unusual attire of one of the gun-wielding intruders was found within fifteen feet of the treehouse.  Pilkington was able to identify Mallett as the intruder with a gun who demanded the drugs.  When interviewed, Mallett initially stated he had been jogging but later stated he was a lookout for the robbery.  Cody Plummer was also arrested in another yard and admitted he had been in the store.  In a post-arrest interview, Plummer accurately described what had happened in the robbery.  After taking statements from Mallett and

Plummer and investigating further, it was determined that K'Von Henderson, Dayton Nelson, and Myles Anderson were also involved in the robbery, by assisting in the planning and hiding the loot afterward.

Nelson testified on behalf of the State at trial. He testified he was with Mallet, Plummer, Henderson, and Anderson a day before the robbery when Mallett came up with the idea to rob the pharmacy and all agreed to participate. The final plan was that Mallett and Plummer were to rob the pharmacy and Nelson and Henderson were to be getaway drivers.

They gathered on the day of the robbery, and Nelson described the unique pants Mallett wore into the drug store. Anderson brought a handgun that they called "Billy," and Nelson saw Anderson hand the gun to either Mallett or Plummer. Nelson observed the two emerging from the drug store and stopped the vehicle he was driving. Mallett opened the trunk of the car, placed the gun and duffle bag in the trunk, and signaled Nelson to leave. Nelson took the loot to his residence, and in a subsequent search of Nelson's residence, medication was found and identified as drugs taken from the pharmacy. The trial commenced on November 24, 2015, but a mistrial was declared, and the trial was reset and began on February 9, 2016. A verdict of guilty on the count of first-degree robbery was returned as to Mallet, Plummer, and Henderson.

Mallett has submitted multiple claims on appeal that will be addressed as (1) claims where error has been preserved, (2) a claim of an illegal sentence, and (3) claims of ineffective assistance of counsel.

## II. Claims Where Error has Been Preserved

Mallett asserts the trial court did not use a weight-of-the-evidence standard in considering the motion for a new trial. The weight-of-the-evidence standard is to be applied when considering a motion for a new trial as opposed to a sufficiency-of-the-evidence standard. *State v. Ellis*, 578 N.W.2d 657, 658-59 (Iowa 1998). The weight-of-the-evidence standard differs from the sufficiency-of-the-evidence standard in that it is not merely a review of the testimony most favorable to the State as in a judgment for acquittal, but all of the evidence is considered, including the credibility of the witnesses. *Id.* The trial court denied the motion for a new trial by referring back to the motion for acquittal and by stating that "[m]ost of those, if not all of those, are matters that have been previously ruled on" and that it would continue to abide by its previous rulings. The State does not contest Mallett's claim the weight-of-the-evidence standard was not applied to the motion. This matter should be and is hereby remanded for the trial court to apply the weight-of-the-evidence standard and determine if a new trial should be granted. However, this does not dispose of this appeal. Other claims could result in a dismissal, a change of the sentence, or other possible relief.

## III. Claim of an Illegal Sentence

*A. Preservation of Error*

A claim of an illegal sentence can be raised at any time. *State v. Bruegger*, 773 N.W.2d 862, 872 (Iowa 2009).

*B. Scope of Review*

Sentences alleged to be unconstitutional are reviewed de novo, and Mallett has raised a constitutional objection to the sentence, claiming it constituted cruel and unusual punishment under the constitutions of the United States and Iowa. *See State v. Lyle*, 854 N.W.2d 378, 382 (Iowa 2014).

*C. Discussion*

In his argument, Mallett primarily relies on the analysis and language used in *State v. Sweet*, 879 N.W.2d 811 (Iowa 2016). Mallett specifically asserts that the mandatory sentence for first-degree robbery is cruel and unusual punishment as to him because he apparently was only twenty-years-old at the time of the crime. All mandatory minimum sentences of imprisonment for youthful offenders are unconstitutional under the cruel-and-unusual-punishment prohibitions of our federal and state constitutions. *See Lyle*, 854 N.W.2d at 402. However, in so ruling, the court accepted the legislature's bright-line rule of eighteen as the definition of a youthful offender. *Id.* at 403.

Mallett also points out that second-degree robbery has been divided into second and third-degree robbery by the legislature, but that has no bearing on his conviction for first-degree robbery. Finally, he points out there are statistics that indicate robbery charges and sentences are imposed in Iowa in a racially-disparate manner, but he fails to suggest how that assertion relates to the cruel-and-unusual-punishment constitutional prohibitions.

### IV. Ineffective Assistance of Counsel

*A. Error Preservation*

An exception to the traditional error preservation rules exist when the claim is ineffective assistance of counsel. *State v. Fountain*, 786 N.W.2d 260, 262-63 (Iowa 2010).

*B. Scope of Review*

Ineffective assistance of counsel presents a constitutional issue, and when a constitutional issue is involved, our review is de novo. *Lemasters v. State*, 821 N.W.2d 856, 862 (Iowa 2012).

*C. Merits of Ineffective Assistance of Counsel Generally*

To prevail on a claim of ineffective assistance of counsel, the claimant must prove by a preponderance of the evidence that (1) counsel failed to perform an essential duty and (2) prejudice resulted. *Ledezma v. State,* 626 N.W.2d 134, 142 (Iowa 2001). A claim of ineffective assistance must overcome the presumption that counsel is competent. *Tyler v. State*, 352 N.W.2d 683, 685 (Iowa 1984). An accused is not entitled to perfect representation but only the level of representation that is within the normal range of competency. *State v. Artzer*, 609 N.W.2d 526, 531 (Iowa 2000). For relief to be granted, there must be a determination that but for ineffective assistance, there is a reasonable probability the result would have been different. *Ledezma*, 626 N.W.2d at 145. Counsel is not ineffective for failing to make a meritless objection. *State v. Brubaker*, 805 N.W.2d 164, 171 (Iowa 2011). When the record is adequate to make a ruling and ineffective-assistance-of-counsel claims are raised on a direct appeal, consideration is permitted but otherwise the issue is to be reserved for

postconviction relief. *Artzer*, 609 N.W.2d at 531. There is an adequate record to address each of the ineffective assistance of counsel claims that Mallett asserts.

1. Speedy Trial Issues

A defendant must be tried within ninety days after an indictment has been filed unless there has been a waiver or good cause is shown. Iowa R. Crim. P. 2.33(2)(b). Mallett signed a written waiver of his ninety-day speedy-trial right on April 17, 2015. He filed a request for reinstatement on June 27, 2015. This was followed by a second waiver of the ninety-day speedy-trial right on June 29, 2015. The first jury was sworn in on March 24, 2015, and the second on the February 9, 2016. The trial information had been filed February 20, 2015. When the speedy-trial right is reasserted and a waiver withdrawn, a defendant must be tried within ninety days of the withdrawal of the waiver. *State v. Hamilton*, 309 N.W.2d 471, 475 (Iowa 1981).

The ninety-day speedy-trial limitation was in effect from February 20 to April 17, and from June 27 to June 29. Otherwise, a waiver was in effect. A motion to dismiss was filed based on the ninety-day rule, and it was denied. Mallett's counsel and Mallett both had signed the waiver documents. The ninety-day rule was set out in the waiver, and Mallett acknowledged in the waivers that he signed them voluntarily, willingly, and after a full discussion with his attorney. Mallett is not appealing the trial court's dismissal of his motion, but as we understand his pro se brief, he now contends it was counsel's fault that he waived his right to a speedy trial. We hold that Mallett's written acknowledgement and the waivers as set out above created effective and enforceable waivers. Again, we believe Mallett cannot overcome the specific

personal acknowledgment contained in the waivers and blame his decision on counsel.

2. Instruction Issues

Mallett asserts that counsel was ineffective in three respects regarding the use of the term "joint criminal conduct" and all three assertions of ineffective assistance culminate in one instruction and counsel's failure to object to it. The instruction referred to is Jury Instruction 20, which stated:

> When two or more persons act together and knowingly commit a crime, each is responsible for the other's acts during the commission of the crime or escape from the scene. The defendant's guilt is the same as the other persons' unless the acts could not reasonably be expected to be done in aiding the commission of the crime.

The joint-criminal-conduct statute can include unplanned criminal acts that can be reasonably foreseen from the planned activity. *State v. Jefferson*, 574 N.W.2d 268, 277 (Iowa 1997). Aiding and abetting is limited to responsibility for the crime that the accused knowingly aided the principal in committing. *State v. Satern*, 516 N.W.2d 839, 843 (Iowa 1994). No separate offense was charged in this case. The jury was also instructed on the concept of aiding and abetting. Both Mallett and the State agree that under the facts of this case, the aiding-and-abetting and the joint-criminal-conduct instructions were virtually the same. Where there is no opportunity for a jury to have found anything other than a defendant's own conduct as a principal or aider and abettor, it is not error to give a joint-criminal-conduct instruction. *State v. Smith*, 739 N.W.2d 289, 294 (Iowa 2007). It is not enough to show the instruction exists for application in a different factual situation, but only if using it in the existing factual situation misstates a

defendant's culpability in some material way. *State v. Jackson*, 587 N.W.2d 764, 765 (Iowa 1998). The joint-criminal-conduct instruction in this case did not mistake Mallett's culpability in any way.

Furthermore, we consider that the joint-criminal-conduct instruction did not misstate the law or contradict the aiding-and-abetting instruction, and if erroneous, it is merely superfluous without resulting prejudice. *See State v. Maxwell*, 743 N.W.2d 185, 197 (Iowa 2008); *State v. Tejeda*, 677 N.W.2d 744, 754 (Iowa 2004). There was no prejudice shown as required by a claim of ineffective assistance of counsel.

3. Severance Claim

Mallett filed a motion for severance along with a motion to continue on November 16th. The motion to sever was based on the need to have substitute counsel. The scheduled trial was to be a joint trial on November 24. Mallett filed the motion to sever with the motion to continue so his counsel could be prepared. The motion was overruled, and the trial commenced. However, a mistrial was declared, and the matter was tried on a later date as set out above. Accordingly, his motion to continue was moot, and the basis for the continuance no longer existed. Counsel had approximately three months to prepare, which was an adequate amount of time.

Mallett has added a new basis for severance from those originally considered. As such, it can only be considered under the ineffective-assistance-of-counsel rubric. *See State v. Goodson*, 503 N.W.2d 395, 399 (Iowa 1993). Mallett's only claim that severance should have been granted was his co-defendant Plummer's claim that Mallett was the one with the gun, the robbery

was done for drugs for Mallett, and his attempt to cast the blame for the robbery on Mallett. These accusations were only a co-defendant's counsel's assertion. Mallett's guilt was not derived from evidence submitted by the other defendants in this case. Instead, it was simply an assertion of irreconcilable or mutually-exclusive defenses, and therefore, it did not support the need for severance. *See State v. Brown*, 397 N.W.2d 689, 696-97 (Iowa 1986). To obtain a severance, an accused must show more than an attempt to exonerate himself by incriminating the other party being tried. *See State v. Clark*, 464 N.W.2d 861, 864 (Iowa 1991).

No objection was made on the basis of prosecutorial misconduct or, rather, conduct Mallett has now labeled as prosecutorial misconduct. Mallett must rely on counsel's failure to object. It is the duty of the prosecutor to assure the defendant of a fair trial, and his primary interest should be that justice is done. *State v. Graves*, 668 N.W.2d 860, 870 (Iowa 2003). Mallett objects that the prosecutor did not use a line up or a picture grouping to test Pilkington's identification of him as the robber with the gun and, furthermore, the prosecutor did not have corroborating evidence to support Nelson's testimony. *See* Iowa R. Crim. P. 2.21(3). Mallett contends, in effect, the prosecutor knew he was innocent but prosecuted him anyway. There is no requirement that a prosecutor must confirm a positive identification of a witness with a lineup, and the evidence supporting Nelson's testimony as an accomplice is overwhelming. To the extent Mallett contends Nelson's credibility was an issue, credibility is an issue for the jury to determine. *See Gail v. Clark*, 410 N.W.2d 662, 671 (Iowa 1982).

The prosecutor introduced evidence that all three of the defendants belong to a musical group that called themselves FlyBoy Entertainment.  Mallett's counsel objected on the basis the prosecutor was attempting to imply the defendants were a part of a criminal gang.  The objection was overruled, but an order restricted the evidence to establishing the group to which the parties belonged was a musical group, and it was only introduced to establish the defendants had known each other.  To use evidence objected to but admitted over the objection by the court does not constitute prosecutorial misconduct.

In his pro se brief, Mallett has made general objections to evidence of prior bad acts and prejudicial statements, but he has not indicated where in the record the objectionable information appears.  These issues are deemed waived.  *See* Iowa R. App. P. 6.903(2)(g)(3).  To the extent Mallett may have alluded to other possible defenses, they are deemed waived for the same reason.

### V.    Conclusion

This matter is remanded to the district court for consideration of the motion for new trial by the weight-of-the-evidence standard.  Otherwise, it is affirmed.

**AFFIRMED IN PART AND REMANDED IN PART.**